UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| CITY OF OMAHA POLICE AND FIRE RETIREMENT SYSTEM, On Behalf of itself and All Others Similarly Situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>THE TIMBERLAND COMPANY and JEFFREY B. SWARTZ,<br><br>　　　　　　　　　　Defendants. | No. 11-cv-00277-SM |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD AND LIAISON COUNSEL**

TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ....................................................................................... 1

II.   FACTUAL BACKGROUND........................................................................................... 2

III.  ARGUMENT ................................................................................................................... 4

    A.    Omaha Police and Fire Should Be Appointed Lead Plaintiff .......................................... 4

        1.    The Exchange Act's Lead Plaintiff Appointment Provisions ..................................... 4

        2.    Omaha Police and Fire Complied with the Exchange Act's Requirements ................. 4

        3.    Omaha Police and Fire Has the Requisite Financial Interest in the Relief Sought by the Class.................................................................................................................... 5

        4.    Omaha Police and Fire Is Precisely the Type of Sophisticated Public Pension Fund Investor Congress Sought to Encourage to Serve as Lead Plaintiffs When Enacting the Lead Plaintiff Provisions ....................................................................................... 5

        5.    Omaha Police and Fire Otherwise Satisfies Rule 23 of the Federal Rules of Civil Procedure ................................................................................................................... 6

    B.    The Court Should Approve Omaha Police and Fire's Choice of Counsel....................... 7

IV.   CONCLUSION................................................................................................................. 8

## I.     PRELIMINARY STATEMENT

On June 3, 2011, Plaintiff City of Omaha Police and Fire Retirement System ("Omaha Police and Fire") filed the above-entitled securities class action in this District on behalf of purchasers of The Timberland Company's ("Timberland") common stock between February 17, 2011 and May 4, 2011, inclusive (the "Class Period"), alleging violations of Sections 10(b), 20(a) and 20A of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §§78j(b), 78t(a) and 78t-1, and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).  As required by §21D(a)(3)(A)(i) of the Exchange Act, on June 6, 2011, Omaha Police and Fire also published an early notice of the pendency of this action in a widely circulated national business-oriented publication notifying other putative class members that they had sixty (60) days in which to seek appointment as Lead Plaintiff in this action by moving for their own appointment as lead plaintiff.  15 U.S.C. §78u-4(a)(3)(A)(i).  The sixty-day deadline expires on August 5, 2011.

The PSLRA's Lead Plaintiff appointment provisions are relatively straightforward. Section 21D(a)(3)(B) of the Exchange Act provides that "[n]ot later than 90 days after the date on which a notice is published under subparagraph (A)(i), the court shall consider any motion made by a purported class member, … and shall appoint as lead plaintiff the member … of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." The "most adequate plaintiff" is the movant "that – (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i); (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B); *In re Enterasys Networks, Inc.*,  No. C 02-071-M, 2002 WL 1901356, at *2 (D.N.H. Aug. 2, 2002).

This motion is made on the grounds that Omaha Police and Fire is the most adequate plaintiff as defined by the Exchange Act.  Not only was Omaha Police and Fire the first and only

class member to file a representative action seeking recovery on behalf of the Class of defrauded Timberland investors, Omaha Police and Fire is precisely the type of institutional investor that Congress sought to summon and empower when it enacted the Exchange Act's lead plaintiff appointment provisions. *See State Universities Retirement Sys. of Illinois v. Sonus Networks, Inc.,* No. C 06-10040, 2006 WL 3827441, at *1 (D. Mass. Dec. 27, 2006) (discussing that in enacting the PSLRA's lead plaintiff provisions, Congress sought to increase the likelihood that large institutional investors would oversee securities cases). As a public pension fund and institutional investor, Omaha Police and Fire is accustomed to acting as a fiduciary and its experience in legal and financial matters will substantially benefit the Class. Moreover, by the filing of its Complaint herein, Omaha Police and Fire evidenced the requisite financial interest in the relief sought, its willingness to serve as a representative party and its satisfaction of the Rule 23 showing required by the Exchange Act's lead plaintiff provision. 15 U.S.C. §78u-4(a)(3)(B).

Accordingly, Omaha Police and Fire hereby moves this Court for an Order appointing it Lead Plaintiff in this action pursuant to §21D(a)(3)(B) of the Exchange Act and approving its selection of Scott+Scott LLP ("Scott+Scott") as plaintiff's Lead Counsel and Shaheen & Gordon, P.A. ("Shaheen & Gordon") as liaison counsel for the Class pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.     FACTUAL BACKGROUND[1]

Timberland, headquartered in Stratham, New Hampshire, designs, develops, markets, and distributes footwear, apparel, and accessories products for men, women, and children in North America, Europe, and Asia. ¶6. This action is brought on behalf of those who purchased Timberland's common stock between February 17, 2011 and May 4, 2011, inclusive, at prices artificially inflated by Timberland's false and misleading statements to the investment community concerning, among other things, the demand for the Company's products. ¶¶2, 22.

---

[1]   These factual allegations are drawn from the Complaint for Violation of the Federal Securities Laws filed herein on June 3, 2011 and replaced on June 6, 2011 (the "Complaint"). ECF No. 1. All "¶_" and "¶¶_" references are to the Complaint.

Plaintiff alleges that while Defendants (Timberland and Jeffrey B. Swartz) were publicly heralding Timberland's sales trends and the Company's business and financial prospects, Defendants knew, in reality, that demand  for the Company's  products  had  actually dramatically declined in key markets like the U.K. during January and February 2011; that the rabid sales "momentum" the Company experienced in 4Q 2010 that led to extraordinary sales growth and increased earnings that quarter had ground to a halt in 1Q 2011; that Defendants had significantly increased the Company's 1Q 2011 advertising  spending in order to buttress sagging sales demand, which would decrease operating income in 1Q 2011; and that Timberland was building up excessive inventory in 1Q 2011, the expense of which would decrease operating income in 1Q 2011.  ¶¶15-32.  Defendants knew that due to these financial impediments, Timberland was not at  all  "making  progress  in  [the] direction" of a 15% operating margin growth as touted to investors.  *Id.* at ¶¶21, 22.

On May 5, 2011, Defendants disclosed Timberland's 1Q 2011 financial results that far underperformed that which Defendants had led the market to believe.  ¶29.  Among other things, Defendants finally revealed that instead of  a  25.7% increase in  sales  over the  prior  year as achieved in  4Q  2010, in  1Q 2011 sales grew only 10% over the prior year; that advertising expenses were up 30%; that inventory had increased by 36.5%; and that operating income was down 29.2% compared to operating income in 1Q 2010.  *Id.*  On this news, the Company's stock plummeted nearly $11 in a single trading session, or 27%, the largest decline in Timberland's stock price in 23 years, on unusually high volume of more than five million shares. ¶32. Plaintiff alleges that as a result of its purchases of Timberland securities during the Class Period, the Class suffered millions of dollars in economic loss, *i.e.*, damages, under the federal securities laws which Omaha Police and Fire seeks to recover through this action. ¶¶32-35.

**III.     ARGUMENT**

        **A.      Omaha Police and Fire Should Be Appointed Lead Plaintiff**

              **1.      The Exchange Act's Lead Plaintiff Appointment Provisions**

The PSLRA's lead plaintiff provisions establish the procedure for appointing a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i). First, the pendency of the class action must be publicized in a widely circulated national business-oriented publication or wire service no later than 20 days after filing of the first complaint. 15 U.S.C. §78u-4(a)(3)(A)(i). Within 60 days after publication of the notice, any other person or group of persons who are members of the putative class may apply to the court to be appointed as lead plaintiff in the previously-filed action, whether or not they have filed a complaint. 15 U.S.C. §§78u-4(a)(3)(A) and (B).

The Exchange Act's lead plaintiff provisions provide that the court shall adopt a presumption that the most adequate plaintiff is the person or group of persons "that - (aa) has ***either filed the complaint*** or made a motion in response to a notice…; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).[2] Because Omaha Police and Fire meets each of these requirements, the Court should appoint Omaha Police and Fire as lead plaintiff. *See gen. Enterasys Networks,* 2002 WL 1901356, at *2-*3.

              **2.      Omaha Police and Fire Complied with the Exchange Act's Requirements**

On June 6, 2011, early notice of the pendency of this action was published on *GlobeNewswire*, a national, business-oriented newswire service. *See* Declaration of Lucy J. Karl ("Karl Decl."), Ex. B; *see also Greebel v. FTP Software, Inc.,* 939 F. Supp. 57, 62-64 (D.Mass.

---

[2]     Unless otherwise noted, all emphasis is added and citations are omitted.

1996) (finding the statute's requirements satisfied by publication in widely circulated business news source "calculated to reach, at the least, sophisticated and institutional investors….").

### 3.   Omaha Police and Fire Has the Requisite Financial Interest in the Relief Sought by the Class

As evidenced by the Certification Pursuant to the Federal Securities Laws filed with Omaha Police and Fire's Complaint on June 6, 2011, Omaha Police and Fire has demonstrated the requisite financial interest in the relief sought based on its purchases of Timberland securities during this relatively short 76-day Class Period.  *See* ECF No. 1-1.  Specifically, Omaha Police and Fire purchased 17,700 shares of Timberland stock at prices ranging between $36.12 and $36.54 per share on February 17, 2011, expending $641,816.  *See* Karl Decl., Ex. C.  While courts do not engage in a full-scale "damage" analysis at this stage of the proceedings, Omaha Police and Fire suffered over $99,000 in estimated losses when Timberland's stock price plummeted to $10.92 per share when trading resumed on May 5, 2011. *Id*.

### 4.   Omaha Police and Fire Is Precisely the Type of Sophisticated Public Pension Fund Investor Congress Sought to Encourage to Serve as Lead Plaintiff When Enacting the Lead Plaintiff Provisions

The stated Congressional objective in amending the Exchange Act in 1995 to enact the lead plaintiff provisions was to encourage sophisticated, organized institutional investors to play a more prominent role in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").   Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the litigation, would result in the appointment of lead plaintiffs more apt to effectively manage complex securities litigation.  *Id*.  As a sophisticated public pension fund institutional investor with a demonstrated significant financial interest in the relief sought, Omaha Police and Fire is precisely the type of lead plaintiff Congress envisioned when it enacted the Exchange

Act's lead plaintiff provisions and should be appointed lead plaintiff. *Enterasys Networks*, 2002 WL 1901356, at *2.

> **5.    Omaha Police and Fire Otherwise Satisfies Rule 23 of the Federal Rules of Civil Procedure**

Section 21D(a)(3)(B) provides that in addition to possessing the requisite financial interest in the outcome of the litigation, the proposed lead plaintiff must also "otherwise satisfy[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B).  Of the four Rule 23 prerequisites to class certification, only two – typicality and adequacy – are relevant at the lead plaintiff appointment stage. *Id*.  Typicality requires that the plaintiffs' claims arise from the same events or course of conduct and involve the same legal theory as do the claims of the rest of the class. *In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 46 (D. Mass. 2001).  As to adequacy, plaintiffs need only show that they possess "common interests and an absence of conflict with the class members and that the plaintiffs' attorneys are qualified, experienced and vigorously able to conduct the litigation." *Id*.

Omaha Police and Fire satisfies the Rule 23 typicality and adequacy requirements and is qualified to be appointed as lead plaintiff.  Questions of law and fact common to the members of the putative Class that predominate over questions that may affect individual class members include the following: (i) whether the Exchange Act was violated by Defendants; and (ii) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.  There is a well-defined community of interest in the questions of law and fact involved in this case.  The claims asserted by Omaha Police and Fire here are typical of the claims of the other members of the putative Class because (1) Omaha Police and Fire purchased Timberland shares during the Class Period; (2) was adversely affected by Defendants' false and misleading statements; and (3) suffered damages as a result thereof.  Indeed, the claims asserted by Omaha Police and Fire are based on the same legal theories and arise "'from the same event or practice or course of conduct that gives rise to the claims of other class members,'" and thus, typicality is satisfied. *See* Newberg, *et al.*, NEWBERG ON CLASS ACTIONS, §3:13 (4th ed. 2008).

Omaha Police and Fire also is an adequate representative of the Class. Omaha Police and Fire filed the only complaint seeking recovery for the Class. As evidenced by the significant financial losses suffered by Omaha Police and Fire and the Class, the interests of Omaha Police and Fire are clearly aligned with members of the Class, and there is no evidence of any antagonism between Omaha Police and Fire's interests and those of the other members of the Class. Further, Omaha Police and Fire has demonstrated its adequacy of representation in this matter by retaining competent and experienced counsel to investigate and prosecute these claims. As shown below, Omaha Police and Fire's proposed Lead and Liaison counsel are highly qualified, experienced, and able to conduct this complex litigation in a professional manner. Thus, Omaha Police and Fire *prima facie* satisfies the typicality and adequacy requirements of Rule 23 for the purposes of this motion.

**B.      The Court Should Approve Omaha Police and Fire's Choice of Counsel**

Pursuant to §21D(a)(3)(B)(v) of the Exchange Act, the presumptive lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class they are seeking to represent. *See* 15 U.S.C. §77u-4(a)(3)(B)(v). In that regard, Omaha Police and Fire has selected the law firm of Scott+Scott as Lead Counsel, a firm which has significant experience in the prosecution of shareholder and securities class actions. *See* Karl Decl., Ex. D. Scott+Scott has served as lead or co-lead counsel in many high-profile actions, directly recovering hundreds of millions of dollars for aggrieved investors and others harmed by corporate chicanery and greed.[3]

---

[3]   Some other recoveries of note for Scott+Scott include, among others: settlement of $80 million for a class of purchasers of Priceline stock in *In re Priceline.com Sec. Litig.*, No. 00-01844 (D. Conn.), a $122 million settlement for purchasers of Mattel stock in *Thurber v. Mattel, Inc.*, No. 99-10368 (C.D. Cal.) Additional recent securities settlements obtained by Scott+Scott, acting as lead or co-lead counsel, include: *In re Emulex Corp. Sec. Litig.*, No. 01-00219 (C.D. Cal.) (settlement of $39 million); *In re Sprint Sec. Litig.*, No. 00-230077 (Cir. Ct. Jackson County, Mo.) (settlement of $50 million); *In re Northwestern Corp. Sec. Litig.*, No. 03-04049 (D.S.D.) (settlement of $61 million); *Irvine v. Imclone Systems, Inc.*, No. 02-00109 (S.D.N.Y.) (settlement of $75 million); *Schnall v. Annuity and Life Re (Holdings) Ltd.*, No. 02-02133 (D. Conn.) (settlement of $27 million); *In re Qwest Communications International, Inc.*, No. 02-08188 (Colorado District Court, City and County of Denver) (shareholder derivative settlement including significant corporate governance reforms and $25 million for the company); and *In re Lattice Semiconductor Corp. Deriv. Litig.*, No. 043327 (Cir. Ct. Oregon) (significant monetary recovery and business reforms, including termination of the then-CEO, termination and adoption

For instance, commenting on the speed, legal acumen and tenacity Scott+Scott partners employed in obtaining a temporary restraining order enjoining the "off shore transfer of … approximate[ly] $1 billion in assets" held by Madoff "feeder funds," one court recently held that:

> It is this Court's position that Scott+Scott did a superlative job in its representation . . . .For the record, it should be noted that Scott+Scott has demonstrated a remarkable grasp and handling of the extraordinarily complex matters in this case.  The extremely professional and thorough means by which [Scott+Scott] has litigated this matter has not been overlooked by this Court. They have possessed a knowledge of the issues presented and this knowledge has always been used to the benefit of all investors.

*New York University v. Ariel Fund Limited*, No. 603803/08, Opinion at 9-10 (New York State Supreme Court, New York County, Feb. 22, 2010).  Karl Decl., Ex. E.

As demonstrated in the firm's résumé, Scott+Scott possesses vast resources, both in terms of financial acumen and expertise, and has committed these resources to use for the benefit of aggrieved investors like the putative Class here.  As one district court judge found in selecting Scott+Scott as co-interim class counsel over other firms proposed, the firm's attorneys are "experienced litigators with the skills and resources necessary to handle the present type of litigation" and appear to have "more experience and possibly greater resources" than others proposed.  *Hill v. The Tribune Co.*, No. 05 C 2602, 2005 WL 3299144, at *4-*5 (N.D. Ill. Oct. 13, 2005).   Likewise, Shaheen & Gordon is a well-regarded New Hampshire firm with substantial experience representing institutional and individual clients in complex and/or class action lawsuits.  *See* Karl Decl., Ex. F. Accordingly, the Court should approve Omaha Police and Fire's selection of counsel.

## IV.    CONCLUSION

For all the foregoing reasons, Omaha Police and Fire respectfully requests that the Court: (i) appoint Omaha Police and Fire as Lead Plaintiff in the action under §21D(a)(3)(B) of the Exchange Act; (ii) approve Omaha Police and Fire's selection of Scott+Scott as lead counsel and

---

of significant changes to the company's auditing, insider trading, executive compensation and other internal practices); among others.

Shaheen & Gordon, P.A. as liaison counsel for the Class pursuant to §21D(a)(3)(B)(v); and (iii)

grant such other and further relief as the Court may deem just and proper.

Dated: August 5, 2011

Respectfully submitted,
SHAHEEN & GORDON, P.A.

/s/ Lucy J. Karl
LUCY J. KARL (N.H. #5547)
107 Storrs Street
P.O. Box 2703
Concord, NH 03302-2703
Telephone: 603/225-7262
Email: lkarl@shaheengordon.com

*Proposed Liaison Counsel*

SCOTT+SCOTT LLP
DAVID R. SCOTT
156 South Main Street
Colchester, CT  06415
Tel:  860-537-3818
Fax:  860-537-4432
Email: drscott@scott-scott.com

SCOTT+SCOTT LLP
WALTER W. NOSS
MARY K. BLASY
707 Broadway, Tenth Floor
San Diego, California 92101
Telephone: 619-233-4565
Email: wnoss@scott-scott.com
        mblasy@scott-scott.com

*Proposed Lead Counsel and Attorneys for
Plaintiff City of Omaha Police and Fire
Retirement System*

CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2011, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

/s/ Lucy J. Karl
LUCY J. KARL (N.H. #5547)
SHAHEEN & GORDON, P.A.
107 Storrs Street
P.O. Box 2703
Concord, NH 03302-2703
Telephone: 603/225-7262
Email: lkarl@shaheengordon.com

1